## AMERICAN SECURITY AND TRUST COMPANY v. NEW AMSTERDAM CASUALTY COMPANY

[No. 131, September Term, 1966.]

*Decided March 13, 1967.*

The cause was argued before HORNEY, MARBURY, OPPEN-HEIMER, McWILLIAMS and FINAN, JJ.

*Saul M. Schwartzbach,* with whom were *Schwartzbach & Wortman* on the brief, for appellant.

*John F. McAuliffe,* with whom were *Heeney, McAuliffe & McAuliffe* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The primary question presented by this appeal is whether the secured party under a chattel deed of trust or the execution creditor under a writ of *fieri facias* is entitled to the net proceeds from the sale of an automobile sold by the sheriff under the writ.

The declaration filed by the secured party, the American Security and Trust Company, against the execution creditor, the New Amsterdam Casualty Company, and the Sheriff of Montgomery County, aside from alleging that the sum of money represented the net proceeds of sale, stated that the money belonged to the secured party because it had a lien at the time of the sale superior to that of the execution creditor. The parties having filed cross motions for summary judgment, the lower court granted the motion of the defendant-appellee and denied the motion of the plaintiff-appellant. On appeal the trust company also contends that it was a purchaser within the meaning of § 9 of Article 39B of the 1957 Code.

The facts were stipulated by the parties. In December of 1961, Everett Greenstreet, being the owner of the automobile, transferred the title thereto to his wife, Catherine Greenstreet. On March 27, 1962, the casualty company obtained a judgment against Everett Greenstreet, and, on April 18th, issued a writ of execution on the judgment. The writ was delivered to the sheriff on April 19th. On May 11, 1962, the trust company made a loan to Catherine Greenstreet took a chattel deed of trust as security therefor and had the lien recorded on the certificate of title to the automobile, but did not record the deed of trust in the county chattel mortgage records. The sheriff, in execution of the writ, seized and took possession of the automobile on May 16th. A motion to quash the attachment, in and to which the trust company was neither a party nor had any notice or knowledge thereof, was denied on September 19th. The chattel deed of trust was received for recording in the clerk's office on September 22nd. On October 8, 1962, the sheriff, in accordance

with the published notice of sale, sold "the right and title, claim, interest and estate both at law and in equity of [Everett Greenstreet only] of, in, to and about the [automobile]," and the net proceeds of sale, in the amount of $2,348.78, were paid by the sheriff to the execution creditor. The existence of a chattel deed of trust was not announced by the sheriff or the auctioneer, but someone appeared at the sale and proclaimed the interest of the trust company in the automobile.

Although the automobile was not levied on by the sheriff until May 16, 1962, five days after the execution of the chattel deed of trust, there is little doubt that the lien of the execution creditor which became effective on April 19, 1962, had priority over the security interest of the secured party which was not executed until May 11, 1962, and was not recorded until more than five months later on September 22, 1962. This is so because the rule is—as it has been for nearly four hundred years —that the lien of an execution has as its effective date, not the day on which the levy was actually made, but the day on which the writ of *fieri facias* was delivered to the sheriff.

The rule had its origin in the Statute of Frauds, 29 Car. 2 (Charles II), Cap. 3, Part XVI, enacted in 1676. See 2 *Alexander's British Statutes* (Coe's Ed.) 689, 692. Also see *Harris v. Max Kohner, Inc.,* 230 Md. 349, 352, 187 A. 2d 97, 98 (1963), in which Judge Prescott on behalf of the Court, after quoting a portion of the ancient statute and an excerpt from 2 Poe, *Pleading and Practice at Law,* § 666, cited an unbroken line of Maryland cases, as well as several opinions of the United States District Court for the District of Maryland, on the subject. There is no need to repeat here all that was so aptly said in the *Harris-Kohner* case other than to reiterate what was said in Poe, at § 666:

> "The meaning and effect of [the Statute of Frauds] are that, *until the writ is actually delivered to the sheriff,* the defendant may lawfully and validly sell or otherwise dispose of his goods; and his assignee acquiring title in good faith will be protected against the execution-creditor. But *after the writ is once delivered* to the sheriff, the goods [within his bailiwick] are virtually in the custody of the law, and are made sub-

ject to the lien of the execution. Accordingly, an assignee or purchaser from the debtor then buys them at his peril, for it will be the right and duty of the sheriff to seize and sell them under the *fi. fa.,* notwithstanding the alienation by the judgment debtor in the interval between the delivery of the writ to the sheriff and the actual levy."

To the same effect, also see Evans, *Maryland Practice,* at pp. 478, 479.

We also repeat a portion of the quotation in the *Harris-Kohner* case from the case of *Furlong v. Edwards,* 3 Md. 99 (1852), at p. 113: "The case of *Harris v. Alcock* [10 G. & J. 226] * * * expressly decides, that the issuing and levying of a *fieri facias,* secures for the creditor a priority or lien upon the debtor's equitable interest in personal property covered by a mortgage, *which lien dates from the time the execution was placed in the officer's hands."*

The case of *Piedmont Land and Development Co. v. Carney,* 232 Md. 21, 192 A. 2d 67 (1963), relied on by the trust company to support the contention that its security interest was paramount to the execution lien is clearly distinguishable from the present case on the facts. In *Piedmont,* where a conditional contract of sale was involved, the lien of execution arose *after* the sale and delivery of the chattel sold but *prior* to the recordation of the contract, while in this case, where we are concerned with a chattel deed of trust instead of a conditional contract of sale and there was no delivery of the mortgaged chattel, the security interest did not even arise until after a lien had been acquired by the execution creditor. Consequently, the execution of the chattel deed of trust before the levying of the writ of *fieri facias* had no bearing on the question as to who is entitled to the proceeds from the sale of the automobile.

The further contention that the trust company was a purchaser within the meaning of § 9 of Art. 39B is also without merit. The statute provides:

"Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser

for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser[,]

(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

(b) Disregard the conveyance and attach or levy execution upon the property conveyed."

Clearly the trust company insofar as the record shows was not a purchaser for a fair consideration and only a purchaser is afforded the provisions of the statute. Had the legislature intended to include a mortgagee within the terms of the statute, it would undoubtedly have done so, and since it did not, the implication is that mortgagees were purposely excluded. See *Gay Investment Co. v. Comi*, 230 Md. 433, 187 A. 2d 463 (1963) ; *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 106 A. 2d 103 (1954). And see *Graham v. Joyce,* 151 Md. 298, 134 Atl. 332 (1926), where it was said that the express imposition of one qualification shows a deliberate rejection of any other. In any event, it was neither alleged nor proved, nor does the trust company contend, that the trustor or mortgagor was in fact a purchaser for a fair consideration without knowledge. Without this there was no showing that the trust company as the secured party had an interest in the automobile, derived through Catherine Greenstreet, equivalent to that of a purchaser for a fair consideration. See § 9 of Art. 39B, *supra.*

While there was evidence to the effect that the lower court, upon hearing the motion to quash the levy (in and to which the trust company was not a party), had declared that the purported transfer of the automobile from Everett Greenstreet to Catherine Greenstreet was not valid, it is clear that the sheriff (at the instance of the casualty company) levied on, advertised and sold only the right, title and interest of Everett Greenstreet in and to the automobile and that such action did not affect such right, title and interest as Catherine Greenstreet (or the trust company in her stead) had in and to the motor vehicle. A judgment creditor can sell only the right, title and in-

terest of the judgment debtor in and to the property seized. *Preissman v. Crockett,* 194 Md. 51, 69 A. 2d 797 (1949). Also see *Cramer v. Roderick,* 128 Md. 422, 98 Atl. 42 (1916). Likewise, since a mortgagor or trustor can convey only that interest in property of which he is possessed, a chattel mortgage of property in which he has no title or interest is ordinarily invalid. 14 C.J.S. *Chattel Mortgages* § 23a; 15 Am. Jur. 2d, *Chattel Mortgages* § 22.

We hold that summary judgment was properly awarded to the appellee against the appellant. While the result would likely have been the same, the trust company, instead of intervening in the execution proceeding and claiming the proceeds of sale, chose to file a separate action and in so doing failed to allege a cause of action against the casualty company.

*Judgment affirmed; appellant to pay the costs.*